## CIRCUIT COURT OF ARLINGTON COUNTY

Esther B. Campbell

v.

New York Life Ins. Co. et al.

October 12, 1972

Case No. (Chancery) 20794

By JUDGE WILLIAM L. WINSTON

The decedent, David Campbell, was the insured under the terms of two policies of life insurance written by the New York Life Insurance Company on his life. He was also the insured under a group policy of life insurance written by the Aetna Casualty and Surety Company at his place of employment. The net proceeds of these policies in the total amount of $23,949.87 has been paid into the Clerk's Office of this Court to be paid pursuant to the decision in the case. The Aetna proceeds amounted to $5,000.00 and the New York Life proceeds to the remainder.

At the time of the decedent's death the designated primary beneficiary on the New York Life policies was "Gail V. Massey, fiancee," the secondary beneficiary being a college fraternity, Kappa Alpha Order. On the Aetna policy Gail V. Massey, as fiancee, was designated as the primary beneficiary with no secondary beneficiary designated.

The claimants of these funds are Esther B. Campbell, the decedent's mother (plaintiff) and Gail V. Massey (defendant). The parties will be referred to as plaintiff

and defendant although each is asserting claim to the fund being held.

The plaintiff initiated and obtained the two New York Life policies on her son's life in 1962 and 1967. She determined the amounts and ownership thereof, paid the premiums on them and was designated as the beneficiary on them. The decedent procured the Aetna policy at his place of employment approximately one month prior to his death. His mother played no part in the procurement of this policy and was never named a beneficiary on it.

On June 20, 1970, the insured, David Campbell, changed the beneficiary on the two New York Life policies from his mother to the defendant. This change was recorded on the books of the company on July 14, 1970. On September 4, 1970, the insured committed suicide by poisoning. He was unmarried at the time.

The plaintiff contends that the change of beneficiary of the New York Life policies was ineffective because the defendant (1) procured the change by fraud, (2) did not have an insurable interest in the life of the insured, and (3) because she procured or caused the death of the insured. Additionally, she claims that there was a contract between herself and her son under which he agreed to leave the beneficiary unchanged until he married, and that under the facts and circumstances existing at the time of his death, she is entitled to an equitable trust in the proceeds. Except for the alleged agreement not to change the beneficiary's name, she claims the proceeds of the Aetna policy on the same grounds.

There was no evidence introduced upon which a finding could be based that the designation of the beneficiary of the Aetna policy nor the change in designation of beneficiary on the New York Life policies were procured by fraud.

The question of "insurable interest" is raised by the plaintiff. At the time the New York Life policies were obtained, clearly the mother had an insurable interest in the decedent's life. The insured was, however, the owner of the policies. The policies contained no prohibition against a change in beneficiary. Under Section 38.1-329, Code, a person may procure or effect an insurance contract upon his own life for the benefit of anyone he chooses. Thus, the question of whether the defendant had an insurable

interest in the decedent's life is immaterial to the decision in the case. *Smith v. Coleman,* 184 Va. 259, 266, 267 (1945). In any event a woman has an insurable interest in the life of her fiance. *Green v. Southwestern Vol. Ass'n.,* 179 Va. 779, 786 (1942). The plaintiff seeks to avoid the effect of this rule by asserting that the defendant was not in fact the fiancee of the decedent. The evidence does not support this contention. The defendant and David Campbell met at Christmas time, 1969, in Tennessee, where they were in college. He brought her home to the Northern Virginia area for that holiday. Her family, too, lived here. Later they became better acquainted. After Valentine's Day, 1970, they planned to marry. This was announced to the plaintiff in April, 1970, in the plaintiff's home by her son in the presence of the defendant. They returned to Tennessee together and returned to this area after the school term was over in June. The defendant first went to her home, but shortly came to the plaintiff's home where she stayed during part of the summer. Three or four days before the decedent's death, he took the defendant to the airport to see her off to Norfolk. The marriage date had been postponed twice and at the time of death no firm date had been fixed for the marriage. Outweighing any evidence to the contrary is the fact that the decedent himself regarded the defendant as his fiancee, designated her as such in his insurance policies and introduced her as such to his mother and others.

The plaintiff seeks further to defeat the defendant's claim to the funds on the ground that the defendant in some manner procured or caused the decedent's death or that he died in pursuance of a suicide pact where they had agreed to kill themselves. There was evidence that at about the same time that David Campbell took his life in Arlington, the defendant took an overdose of aspirin in Norfolk and was hospitalized. Also there was evidence that the subject of suicide had been mentioned by the defendant during the course of her stay in the plaintiff's home in the summer, and that a prior suitor of her's had killed himself. At most these are coincidences and fall far short of any proof of the fact.

Lastly, the plaintiff seeks to recover on the ground that she and her son had an agreement whereby he was not to change the name of the beneficiary of the New York

Life policies until he was married and self-supporting. These policies were taken out when David Campbell was eighteen and twenty-three years of age. The second policy was taken out some three and one-half years prior to his death.

In the absence of contract, payments on an insurance contract are gratuitous and create no equities in favor of the payor. *Leftwich v. Wells*, 101 Va. 255, 258 (1903). The payment of premiums alone does not create a lien on the proceeds of the policy for the repayment of premiums. *Harrison v. Winstead*, 251 N.C. 113, 117, 110 S.E.2d 903, 906. Certainly where a close family relationship exists between the insured and the payor of the premiums no inference of a promise of re-payment would exist.

The plaintiff testified that there was agreement by the decedent that he would not change the name of the beneficiary until he had married and become self-supporting. There was no evidence, however, that the decedent in any manner sought to conceal from his mother the fact that he had made the change. This was done while the defendant was staying in the Campbell home. The defendant testified that during this stay the subject of insurance was discussed at the dinner table when wedding plans were being discussed. According to this testimony the plaintiff reminded her son that his insurance should be changed. When advised by him that this had been done, she assented. This was denied by the plaintiff. During the existence of the New York Life policies, the decedent had borrowed against them. The plaintiff knew of earlier loans that he had obtained, but denied knowledge of a loan which he received in June of the year he died on about the same date as the change in designation of beneficiary. The plaintiff admitted that the defendant never asked permission to borrow on the policies. Upon all the evidence relating to the existence of a contract, the Court finds that the plaintiff has failed to sustain the burden of proof.

Counsel for the defendant should prepare an order finding for the defendant on all issues and sustaining her right to recover the sum being held.